May it please the Court, Ramon Martinez for the LG respondents. Your Honors, it's undisputed, undisputed that if B&C gets Section 1782 discovery here, it's going to turn around and use that discovery in the non-qualifying German arbitration. Right, and they're allowed to do that? They're allowed to do that unless there's a protective order that's issued, Your Honor. We don't think that either discovery should be authorized in the first place or if discovery is going to be authorized, we think it needs to be subject to a protective order. Why? Well, because it's clear that the real purpose, the primary purpose for which they're seeking the discovery is not the Austrian criminal proceeding but rather the non-qualifying German arbitration. Why is that obvious? I think there are four things that I would point to, Your Honor. First of all, I think there's an element of common sense that informs my argument that it's obvious, mainly the fact that they have $400 million at stake in the German arbitration. And that common sense is enough for us to say that it was clearly erroneous for the district court to reject that argument, that this was a pretext? I think there are some additional points, but I think with respect to the pretext analysis of the district court, there's a legal error that informed the district court's pretext determination. And the pretext determination was based on an incorrect understanding of what the pretext inquiry involves. The court, and this is clear from SPA pages 8 to 13, the magistrate judge later endorsed by the court thought that the pretext inquiry essentially looked to just the question of whether the BNC was going to submit the information to the qualifying proceeding. And it basically said if there's a de minimis reason to think that that's going to happen, then there's no pretext. Why isn't that good enough? If they are seeking this for a legitimate purpose, the fact that they also would like to use it in some other context, isn't that exactly what happened in the Nigeria decision that your adversaries rely on very heavily and that you did not cite at all in your reply brief? No, Your Honor. Not at all, Your Honor. In the Nigeria situation, this whole question came up. And the reason, the court had a very lengthy analysis of why there was no need for a use restriction. And the whole reason that there was no need is because it concluded that the English proceeding in that case, the second proceeding, was in fact a qualifying proceeding under 1782. So if anything, the Nigeria case helps us because here there's no dispute that after ZF Automotive, the German arbitration is a non-qualifying proceeding. And so it triggers the concerns about circumvention that require the pretext inquiry and analysis in the first place. With respect to what pretext means, Your Honor, I think there are a couple of places to look to inform that judgment. Number one, just when we talk about it, when the Supreme Court has talked about pretext, like the dictionary definition of pretext is when the stated reason for something is not the real reason. So it contemplates that there are two different reasons that might be in play. What if there are mixed? Right. I mean, it seems the logic of your argument is because it's being used in a non-qualifying proceeding, therefore its use in the qualifying proceeding must be pretext. That's not true as a matter of logic, and it's counter to assent delight. Well, first of all, I think assent delight recognizes that there are going to be circumstances in which the information is going to be used for a qualifying use and a non-qualifying use. And I think what it contemplates is this sort of pretext inquiry, which is about what is the real motivation. It's a practical inquiry. Again, you're saying the real motivation. And I'm not saying what if there are two motivations. I think in the cases where there are two motivations, I think you would look to what the primary purpose is. Wait. Is that what a pretext means? The primary? That if there is a good faith basis for seeking something, the court should inquire into whether that is their primary reason? Is that what your case says that? Harbor Victoria case, which was decided by Judge Nathan in the district court, expressly looked at things. Oh, that was when she was on the district court. That doesn't bind us now. But that's perhaps why she is now on this court, because her reasoning in that case is so good. It's her reverse. It's so good. I happen to have written the Nigeria decision. But the Nigeria decision, if you look at it, and I think that as I understood the rationale in that decision, the reason, the whole reason, if it were true that it didn't matter whether the English proceeding was qualifying or not, then the court could have just said it doesn't matter whether the English proceeding is a qualified proceeding or not, because you can always use information you get for one purpose in discovery and use it for a different purpose. Well, it sounds like a good reason not to worry too much about what's pretext and what's not, because it can be used in both. And so that doesn't mean that it answers the pretext or that it's not a necessary case. Well, we think there are plenty of cases, Judge Nathan, your decision in the Harbor of Victoria case, your decision in the Aosh case, the Postales case, in which it's very clear that the information is going to be used in two different ways, one of which would qualify under 1782, one of which wouldn't. All three of those cases, the court ultimately concluded that under the intel factors, no discovery should be granted at all. Now, if you disagree with us on that, we have a second argument, which is that even if you think that there's a perfectly legitimate use for this information in the Austrian criminal proceeding, you should still issue a use restriction, a protective order, that would prevent the other side from using that in the non-qualified proceeding. Why? That's my question. Why? Because it would circumvent the limits that Congress has placed on 1782 discovery. Well, that's if it's a pretext. That's not a separate argument. That's the argument that they really don't care about the criminal proceeding. They really want it for something else. Well. That's one point. But assume that I thought you were saying you have an alternative argument if we reject the pretext argument. I think. And that is that it just wouldn't be fair to let them use it in the arbitration proceeding, and I'm wondering why that's the case. If it is actual, true information that is relevant, why shouldn't they be allowed to use it in a legitimate way in a legitimate proceeding? Because I think it creates an incentive for people to gin up, and whether that's the case here, whether it's ginned up or not, we can debate, but it creates this terrible incentive for people to go. In civil law countries, you could just go and file a document that initiates a criminal case, and then you could point to that criminal case when, really, what you want the information for is the non-qualifying arbitration. Well, the reason they want the criminal case is pretty much the same thing, isn't it? That once they get the criminal case going, they can typically in a civil law country be a civil party to that case, and that's going to be very helpful to them if you guys or somebody that they're pursuing in an arbitration get convicted of some criminal case. That makes the arbitration a little easier for them, doesn't it? And this court, the U.S. courts would have nothing to say about that, but what the U.S. courts do have something to say about is when a U.S. company is being gone after in U.S. court for discovery information, and 1782 applies, and Congress and the Supreme Court have now made clear that there are limits on what a proper appropriate use of 1782 is. Well, wait, wait, wait, wait, wait. We're talking about a discretionary decision of the district court, point one, which is reviewed for abuse of discretion. That's very different than a limit that says thou shalt not. Then second, all the intel factors go to an exercise of discretion. They're not limits that say if X, then no discovery. That's point one. And point two is that the one you're talking about hinges on a factual determination, which is reviewed for clear error. So what you are facing is persuading us that it was clear error for the district court not to find pretext and that it was an abuse of discretion, and if that fails, that was an abuse of discretion for the court to not grant a limiting order. You have an additional problem, which is you didn't ask initially for a use restriction, as I understand it. You've gone back. You filed a motion. We've preserved everything, Your Honor, but let me try to – there's a lot to unpack. You'll add that in at the end. Sure. So three things, I think. First, on the question of discretion, I think that if the lower court applies the wrong legal standard, then that is, by definition, an abuse of discretion. And we would suggest that here – And the wrong legal determination that the district court made was to say that it should have said that the pretext inquiry means even if there was a good faith desire to use this in the criminal proceeding, if that was not their primary desire to get this information, then it's a pretext. I think that the primary purpose way to think about it is the correct way to think about it. And the court didn't even look to the fact that there was this other proceeding and what the – it didn't compare the motivations between the qualifying use and the non-qualifying use. If you look at the discussion at pages 8 to 13 in the SPA, all it says is the reason that this is not a pretext is because there's – that the other side has made a de minimis showing that the information sought would be used in the criminal proceeding. We don't dispute that. We recognize they're going to use it in the criminal proceeding. We just don't think that's the primary reason. And so under cases like Harbor Victoria, IOSH, Post Dallas – Under what case of the Supreme Court or the Second Circuit that sets that test? I think that the – I don't think there's a case for – Or any of us. So I think Intel foresees the idea that if you're going to use it for purposes that are not – for non-1782 purposes, that that might be a reason for denying it. I think that the Nigeria case – That might be a reason for denying it. Now we're back to abuse of discretion. We're not talking about legal errors. Maybe that would be an appropriate reason for a district court to exercise its discretion if it so chose. If it were applying the correct legal standard, which would require an inquiry into what the real purpose was. What the primary purpose was, not the real purpose. The primary purpose is your standard, and that's what you're saying it was not. It's the argument that we take and are informed by the decision in Harbor Victoria by District Judge Nathan, which we think was – By another district court, a district judge who has discretion over how to decide that issue, not a decision of this court or of the Supreme Court saying this is what the legal requirement is. We concede that the Supreme Court and this court have not conclusively determined what – how you look at the pretext. We're not making the argument that that's – So you're making the argument that what we should do is require the district court in every Section 1782 case to engage in a fairly extensive factual inquiry into the subjective motivations of the applicant to determine among intertwined reasons for why they want to get this information because they want to prove something about your client. In a criminal case and in an arbitration, which is uppermost in their mind? In cases in which the other side asks for a use restriction and in which there's good reason to think that the real motivation or the primary motivation is something – I'm sorry. I thought you were going to answer Judge Nathan's question as to whether you did ask for a use restriction. Yes. I mean, you did the motion to quash, which is not – I mean, not technically before us, although the stay complicates it, but the petition was filed. Can I say one more thing? I just want to be clear, and I know there are a lot of very good questions, and there's some tricky issues here, but I just want to be very clear about what our argument is about the legal error that the district court committed, and I think there are two that would – and then I want to address the jurisdictional point. The first one is this debate about the legal question of, like, what counts as a pretext. The second one, though, is the question of whether the judge has legal authority to issue a use restriction that would interfere with BNC's rights under Austrian law. Now, when we look at the motion to quash ruling, this is at page 46. Just factually. Yes. On the initial petition, which you opposed, you did not, correct me if I'm wrong, argue in the alternative, you should issue a use restriction. We said that we reserved that issue and that we were planning to raise it later if needed in the context of a motion to quash, which we did. Now, we think the district court sort of passed on it in the sense that there was a long colloquy at the hearing on the first – But then you said it is not an argument that you're making in response to the issue that is before us today. You're saying we're passing on that, we're going to raise that in a different proceeding, and that different proceeding then comes into play. We did raise it in the appeal. If you don't think it's properly presented in the appeal, I think then it's properly presented in the context of the stay motion and in the context of our second appeal and second stay motion, which are also now under the jurisdiction of this court. The second proceeding is interesting because it rather undermines, does it not, the position that the initial petition should have been denied because it was unduly burdensome. Because as I read what the magistrate judge said, it was, well, you can come back to me later and make arguments about burden, and we'll worry about that then, which is a fairly typical thing for judges and magistrate judges to do with respect to burdensomeness inquiries. Let's first get the question of whether there's going to be any discovery at all settled, and then we'll worry about the details later. I think that's a fair point, Your Honor. I think that the danger of that reasoning, though, is that we're going to have like an infinite number of appeals here because – We finished with this one. But that's another question. Well, we'd love to win, so that would end in our favor. I do think, so I think just to be very clear, we think all the issues are teed up in the second circuit. We think this panel obviously has control of the first appeal. So then if that's so, and I'm interrupting you again, but just to be clear, there is a use restriction imposed. And so the question is not should there be any use restriction. The question then, assuming it's before us, is should there be a use restriction different than requiring approval of the German prosecutor before – of the prosecutor before using it in the German arbitration? Right. That's sort of our second argument, is that if you're going to allow discovery here, it needs to be a real use restriction, not an illusory one. Why is that illusory? The one here is illusory because everyone agrees that the – that what BNC is going to do if it gets this information is just hand it over to the prosecutor.  And then they have – we all agree they have rights to look at the file that the prosecutor gives them. And the prosecutor has – there's no reason to think the prosecutor is going to care about whether they use it in the German arbitration. But I thought the whole point of these – the underlying issue here is sort of evading European restrictions on discovery. I think the more fundamental question is evading Congress' and the Supreme Court's restrictions on using 1782 discovery for a non-qualifying proceeding. And so the fact that – the fact that they're going to – what they're going to be able to do because of this – I think that's just an argument to disagree with. Well – Accent to light. I think accent to light recognizes, Your Honor, and the other cases that we've cited, Postalis, Sabag, Ayash, Harbor Victoria. All of those cases, like this one, involve two different proceedings, one that was qualifying and one that was not. And in both cases, the dispute wasn't whether they were going to actually submit it to the qualifying proceeding. The dispute was that 1782 was essentially being used as an end run, as a circumvention, as an excuse to get information through one justification when really what the person getting the information wanted was to use it for the other purpose. And what the courts have recognized, either by denying the application in its entirety under Intel or by imposing a use restriction, what they've recognized is that we shouldn't allow applicants to do that. It's going to create abuse. It's going to create incentives for people to file kind of cases to get in the door under 1782 when really what they want the discovery for is something else. Is there any indication that it was the applicant here that set this criminal inquiry in motion? Yes, they did set the criminal inquiry. That's, I think, undisputed. And that was like a frivolous thing just to get this arbitration? We're not saying – well, we do think it's frivolous in the sense that we don't think it has merit. But I think that if you look at the way in which this whole process evolved, they filed the criminal complaints in the spring. They sat – they didn't file a 1782 request until they were on the eve of filing the arbitration. Now, what did they ask for? Sorry, before they filed the arbitration, they sent us a notice to preserve documents, very extensive notice to preserve documents for the arbitration. Isn't that because that's all the information that anyone would be interested in who is pursuing this claim, whether that's a prosecutor or whether that is a civil litigant in a civil court or whether it's a participant in an arbitration. These are the documents that are relevant to the underlying merits of all of those proceedings. Your Honor, the prosecutors don't seem to think so. Because the prosecutor – we know what the prosecutors care about here because they've interviewed one of my clients just a few weeks ago. And they did not ask for – Ah, so now the inquiry that the district court is going to have to get into is not only what is the real thought process of these parties, it's also what does the prosecutor think is important? I think that in figuring out the – you have to consider the relevant facts in figuring out what's going on here and what's – This is supposed to be a simple proceeding. I don't think it's supposed to be a rubber stamp proceeding where – I didn't say it was a rubber stamp. It's supposed to be something that is generally done out of Part 1.  Your Honor, literally – It is wheeled out now. Literally the district court said that all that's necessary is a de minimis showing that the information sought is going to be used in the proceeding. A de minimis showing. But did you argue to the district court that the initiation of the criminal prosecution was frivolous? Without merit? I don't know that we used the word frivolous. Improper in any way?  No. We're not resting on that argument here because I'm sure that we're not asking you to decide the merits of the criminal prosecution. I think that if you disagree with the argument that they shouldn't get discovery because the criminal prosecution is good enough that at least the evidence should be submitted there, fine.    But, I mean, that would go to pretext. And the point I was trying to make to you, Judge Nathan, is if you actually look at the reason that the district court and the magistrate agreed with us that the use restriction was necessary. And then she said, at pages 46 to 47 of the transcript, that the reason she could not give us the use restriction we wanted, and here I'm quoting, is because I don't believe I have the authority to limit whatever rights BNC has under Austrian law. And then she repeated that on the next page. I do not believe I have the authority to interfere with whatever rights you, BNC, has under Austrian law. That statement of law is just not correct. Of course the district court has authority to impose a protective order, a use restriction, that limits the subsequent use of discovery that that district judge is granting in the first place. Well, but it can limit the use of the discovery in the first instance. What the magistrate judge is saying here is once this information is in the hands of the prosecutor in Austria, would you have the magistrate judge order the Austrian prosecutor not to turn over those materials? Absolutely not. We are not asking for any restriction on the Austrian prosecutor. The only restriction we're asking for is a restriction on BNC. So, but BNC, but I think that what was put in place in the transcript you're referring to is that the magistrate judge says BNC won't directly use this in the arbitration proceeding. But if they want to get it after they've turned it over to the Austrian prosecutor, that may be semantics at some level in the sense that at the end of the day it's the same result. But it is different in terms of the impact of a United States judge's order and who it is restricting. That is different. But I think we need to look at this with practicalities and with a pragmatic sort of common sense. And if the use restriction basically says, okay, you know, I can restrict you directly, but I can't restrict you indirectly. So as long as you give it to someone else and then you ask for it back, then you can use it. You give it to someone else who is the person to whom you are entitled to have the discovery in order to turn it over to. I agree. But the use restriction doesn't interfere with that. As far as practicalities are concerned, what you're saying is if there is evidence of criminality under Austrian law in these documents and those documents are then discovered to them, they give it to the prosecutor and the prosecutor says, wow, I'm glad to have this. I'm going to use it in connection with my criminal inquiry. And here, you can have it and you can use it for whatever you want to use it for. You want to block that so that your clients will not have to confront that evidence of criminality in the arbitration. And you're here telling me that they are engaged in pretextual arguments. Your Honor, no. We think that if they came to this Court and they asked for you directly to have this terrible evidence of criminality for use in the arbitration, all those points you just made would be just as resonant. Exactly. But it would not be allowed. Excuse me. Because in that case, there would not be a legitimate criminal inquiry going on in Austria to which this evidence is relevant. That makes a big difference. That is a qualifying proceeding, point one. That is presumably a good faith inquiry by Austrian prosecutors to believe that this matter is worth investigating and this evidence is putatively relevant to that inquiry. I think And if that is the case, then I don't see any good reason on earth why that evidence should not be made available to them to use in the criminal inquiry and certainly if the Austrian prosecutor has no problem with then releasing it to them, why that evidence should not be usable in an effort to hold your client civilly responsible in an arbitration. I don't get it. Because U.S. law 1782, as passed by Congress, interpreted by the Supreme Court, says that it does not care about their right to use it in the arbitration. The only thing they care about is their right to use it in the criminal proceeding. Exactly. And so if you want to give them the And if the criminal proceeding is a legitimate one and it's taking place and they get that evidence because it is relevant to that inquiry and they give it to the criminal authorities and the criminal authorities decide we're happy to give it back to you, why are we concerned about that? Because at that point it's true that technically it has gone through the hands of an intermediary and been handed right back to them. But the only – it's essentially allowing them to achieve indirectly what the U.S. law and the Supreme Court have said they cannot achieve. The indirectness is not just some – Nothing. It's a thing. The indirectness that you're complaining of is precisely what 1782 is for, to allow that information to be used in the criminal proceeding. And once that happens, once that happens, then I don't see why we should be so terribly concerned about the possibility that the Austrian prosecutors will release it to a party to use in some other context. Your Honor, I think that with respect, if that were true, then I think all the district court decisions that we've cited would be wrong because that would – Why would they be wrong? They're exercises of discretion. They can – No, because – Judges can exercise their discretion one way in one case. A different judge in a different case. But the rationale in those cases was that because the primary reason that the documents are being sought is for the non-qualifying proceeding, that that's a reason to either not give the discovery in the first place or to give the lesser relief of imposing a use restriction. So if you were right – Maybe they're all wrong then. Okay. Maybe they're all wrong, but I don't think they are because I think that what – why it's important to have these use restrictions and these protective orders is because long-term for the health of the system and with an eye towards the intent that Congress had here, you don't want to have a system in which there's going to be an incentive of someone who's going into an arbitration, whereas BNCA is where they're seeking $400 million, that all they have to do is file a criminal complaint, which is extremely easy to do in a civil law country, and then suddenly they can use that to get discovery in a U.S. court that they otherwise would not be able to get. There's an obvious incentive to circumvent. All they have to do is make a fraudulent criminal complaint. No, it didn't have to be fraudulent. It can be – it doesn't have to be fraudulent. All they have to do is make a legitimate showing that there is good reason to institute a criminal inquiry in another country. That's all that they have to do. All you have to do would be to say we think fraud was – fraud is at issue in the arbitration. We think there was criminal fraud, too. Therefore, I'm coming to a U.S. court and I'm going to ask for potentially hundreds of thousands of documents from a U.S. company in a U.S. court that could not be sought after for the arbitration directly. And because we filed a piece of paper in front of a civil – investigating magistrate or authority in a civil law country that launches a criminal investigation, we suddenly get all this evidence. I don't think that that's what Congress had in mind to have the statute of stopper. But Congress had in mind you'll have an opportunity to argue to that district court judge. This isn't really what they – this isn't a thing. It's frivolous. It's meritless. It's illegitimate. It's not going anywhere. It's going to be shut down the moment this discovery gets – all of those things. You have an opportunity to make that argument. And we won on that in the sense that the district judge imposed the use restriction. The one thing that the district judge – Well, then congratulations. But if I could just finish the point. The reason – the thing that we didn't win was the scope of the use restriction. And the reason we didn't win it is because the district judge made a clear legal error on pages 46 to 47 of the transcript where she said that she didn't have authority to prevent them from interfering with their Austrian law rights. In the appeal that's not before this panel. Your Honor, it's certainly before this court, the Second Circuit. And we do think it's implicated in the stay motion and in the order that we have appealed. And we'd be happy to move to consolidate the second appeal with the first. Look, we've tried our best to – I thought you did. You didn't? You noted it was related. We noted it in Form C. We said that they were related. We're happy to file a consolidation motion. And we'd love the opportunity to come in and argue more about the use restriction. We do think it would be helpful. One way to sort of give us the opportunity to argue in favor of that use restriction if you don't think it's properly presented here, we would very happily do expedited briefing in that second appeal. And you could consider it, if you'd consider granting a stay, just to give us a chance to argue the use restriction in a posture where you think it's more properly presented. We would very much welcome that. We do think that on the use restriction question, leaving aside the question of whether they can use it for the discovery, just the use restriction, we think that this issue that – this argument that they can't – that a use restriction can't be ordered because it would interfere with their rights, which are not actual affirmative rights under Austrian law at all. I mean, the other side – the other side's expert at page JA1123, and it's talking about the Austrian law at issue here. It's like Section 68 of the Austrian Code of Criminal Procedure, all of which – the only thing that says is that you can go inspect the documents in the prosecutor's file. It doesn't say you have some sort of affirmative Austrian law right to go use them for any particular purpose. So the use restriction here just would operate like any other use restriction, which would interfere a freedom people might otherwise have to use information in their possession. All right. Thank you, Mr. Martinez.  We'll take a break, which will leave the panel the freedom to grant it or not. Thank you. And then consider how we want to handle that. Mr. Rosenberg. Good afternoon, Your Honors. It's Zachary Rosenberg, Cobrae and Kim for the Appelli B and C, KB Holding, GMEA. So there are a lot of places I could start. Where I want to start is in the record on a motion to quash because it's something that was cited just moments ago by counsel as to the use restriction. And I want to back up for a minute because the court inquired of counsel whether they saw it in the alternative use restriction in opposition to the original application. And we had provided a courtesy copy of the application to the law firm the day it was filed. So it quickly turned from what was labeled an ex parte application into a contested application. And it was fully vetted with multiple rounds of briefing. And it was us, it was B and C that proposed the use restriction that many, many, many months later, the district court or the magistrate judge sought to impose, which we think is a very elegant solution to a false accusation that the primary purpose of the criminal investigation or the criminal proceeding is protectionally to get evidence for arbitration. That's simply not the case. But in order to quell that false accusation very early on, we simply said we would agree to, in the first instance, only put this evidence before the prosecutor, which is the investigating authority. And that was rejected by the respondents in the underlying proceeding. And when it came to their motion to quash many, many months later, and I think the subtext, I won't call it a pretext, but the subtext here is delay. We're nearly two years into this proceeding, and we have gotten not one shred of paper from the other side. Can I just, I want to make sure I understand the initial point you're making, that with respect to the initial petition, which was opposed and not ex parte, you offered to restrict its use solely to the Austrian prosecution? From the first instance, you said. And I was going to ask the question, what do you mean by that? Precisely in the way that Magistrate Judge Figueredo ultimately ruled, that we would, in the first instance, provide the information to the prosecutor, to the public prosecutor. I misunderstood. It is the prosecutor then has discretion as to what we can do with its files. I'm not an expert in Austrian law. I understand there are a number of rights of criminal victims to inspect files and potentially use them. But we thought that served two purposes. One, to dispel any notion, and I'll get to that in a moment, that the purpose of this application was for the arbitration. It was not then and it is not now. That doesn't mean, we don't know what we're going to find. That doesn't mean that if, as the Court, you know, I won't say anticipates, but it's a possibility that there will be very incriminating evidence that might be relevant to the arbitration. And then there are two levels. It will be in the hands of the prosecutor. And if the prosecutor allows a B&C to inspect the file and use it elsewhere, which I think is generally a right, but it is subject to the prosecutor's discretion, then it goes to the arbitrators who will decide whether or not it's relevant. So we proffered this in the application phase, in the phase that's before this Court, and it was resoundingly rejected because they took an all-or-nothing approach. Or maybe it wasn't an all-or-nothing approach. It was a staggered approach because they went for everything, which is deny the whole thing. They lost. There's never been a stay in place in this case at any level. Then we served the subpoenas. Then they went before the Court, sought to quash and now the protective order, and that's the issue that's not in front of the Court. I just wanted to get that out of the way because I do think it's relevant, and I also think that the statements of Magistrate Judge Figueredo just before she imposed the use restriction are very telling. It's page 45 of the transcript that counsel cited. Line 17. I concluded that there was no evidence that B&C was attempting to use the Austrian criminal investigation as a pretext for obtaining discovery through section 1782 for use in the arbitration. This was a month and a half ago or two months ago. I still believe there's no evidence before me that B&C has used the Austrian criminal investigation as a ruse, as a trick for gaining discovery for use in the foreign arbitration. I do agree that I would have no authority to issue such discovery under section 1782 following ZF automotive, but a use restriction would address that concern here. So the Court then proceeded to impose the use restriction that we had actually suggested almost a year earlier, and that might be before the Court at some point, but I think it's important for clarity because we're talking about two different time frames. The other thing is I think I heard for the first time that a witness was interviewed. We understood that a witness might be interviewed, but I don't think that's properly before this Court, and I was hesitant to object when it was being said, and I didn't object, but I just wanted to make that clear. Now, going back to some of the grounding legal principles and this idea that the district court should search for the primary purpose, there's nothing in the case law that even hints at that. In fact, I think the case law, including the case law in this Court, dictates quite the opposite. So let's start with Accent Delight, which is the real seminal case on this issue. In Accent Delight, the Court actually, this Court, actually acknowledged that the And I'll give a pin site of the page. It's page 128 of the decision. It says, Petitioners, meaning the applicant, have represented to the Court that they intend to submit the discovery in the French proceeding, which was not the proceeding that was the subject of the 1782 application, should we affirm the order below. And that Court then proceeded to establish this principle of the legitimate but far-fetched concern that there might be a ruse. And it didn't cite back to that stated intent. So the idea that there might be a dual intent has no place in this analysis if you just look at the grounding decision on it, Accent Delight. Now, to So what do you argue is the test, or how do you go about making an assessment of pretext? I think you can look to some of the general principles. For example, if the requested discovery is so far afield from what, you know, the Court, the district, and this is left to the discretion of the district court, and I think district courts are well-equipped to suss out pretext and ruse in international proceedings. But if you look at it, at a complaint, and it doesn't look anything like the discovery request, perhaps that might, and it looks very much like, you know, a non-qualifying proceeding, perhaps that could give you a sense that there's a pretext. And perhaps then you could put a protective order in place. Perhaps you could deny the application. That's fundamentally not what happened here. I mean, by the time this case got to the district court in the underlying Austrian proceeding, it had, and I won't even try to pronounce the German words, but it, in Austria, when you file a complaint, and BNC is the complainant, and BNC has private rights, as in most European civil law jurisdictions, both to participate and for participating, but when that happens, it starts in initial investigation. Again, I will not, it's in the record, but I won't try to pronounce the German. And then it has to proceed to active investigation, which is different German word. This proceeding passed through active investigation. I won't necessarily bore this Court with the details of it, because a lot of it is in the motion to quash record, not in the underlying application record, but there is an extraordinarily active criminal investigation ongoing in Austria. So the idea that there's anything contextual or loose-legged about it. Can I just ask hypothetical? So you've got the German arbitration going, and you think, oh, maybe it would be great if we could get discovery. And so you say, well, can't do it through 1782. Aha, if we open a criminal proceeding, which we can do with the filing of a paper in Austria, we can get it there, and then we can use it there. I mean, just assume that that were in the record of kind of the thought process and the motivation that happened. Is that pretext? That's a closer call. I mean, it's hard to, it's not what happened here. I mean, not even close. But if you're filing something that is otherwise frivolous, which it clearly is not, and it shouldn't be limited to criminal proceedings. You can do that with a civil proceeding. In other words, if you have an arbitration that you know you can't get 1782 support for, but you can file a civil case in a foreign country, it would be the same analysis. I don't think it's unique to criminal. And I think this district court, and the record couldn't be any clearer, that went through a very thorough analysis multiple times to try to suss out pretext and found none. So I think that. It seemed to me that one possibility, there are two things that look pretty obvious. One is if the allegation of criminality appears facially to be frivolous. And the second would be if the information that is sought bears no reasonable relationship to the criminal complaint that has been made, but does have obvious relevance to a civil proceeding, or an arbitration rather, something that is not a qualifying tribunal, those would be good reasons to think that something is pretextual. I would agree with that, Your Honor. But conversely, in a case where the district court concludes that there is a good faith criminal investigation happening and that the information sought is clearly relevant, however extensive, to the criminal proceeding, that would be very strong evidence that it's not a ruse. And here, to pick up on that point, the district court at both levels, the magistrate judge and Judge Kaplan, found that the subpoenas requested information falling into two broad buckets, misappropriation slash embezzlement and false accounting, false EBITDA. That is the subject matter of the criminal investigation. In fact, we put into the record there are letters from, as is required under Austrian law, there are letters from the Austrian prosecutor to each of the four suspects in those criminal investigations, saying just that, I'll quote part of it. You are under suspicion that you were involved in balance sheet manipulation concerning the annual financial statements 2018 to 2020, in conscious and deliberate collaboration with others, with intent to unlawfully enrich yourselves, dot, dot, dot, in the sale of Shure, the underlying company, to B&C. That is from the criminal authority that is investigating. That is after the initial suspicion phase into the active investigation. And it has gone forward apace since then. So we are now, as I said, nearly two years post making the application, about two years post having filed the criminal complaints. And what I think the danger here is, of a ruse or a pretext, is if any respondent to a 1782 application can just throw out the word pretext or ruse. And actually the word in Accent to Light is ruse, which I think is slightly different than a pretext. It requires trickery and deceit. If just saying that can create, you know, this inordinate delay in getting the evidence to put in front of a prosecutor who is going to make charging decisions, we hope soon, that is subject to abuse much more than what happened here. What happened here is the district court did a very searching analysis, has found multiple times that there was no pretext, no ruse, has found that these are frivolous. It doesn't do it justice. These are the opposite of frivolous criminal proceedings. And they are moving apace. There's one more legal point I want to make. Well, actually, two quickly. Quickly. I mean, again, Mr. Martinez, about 20 minutes over. You're not getting that, but two quick points. Two quick points. First, there is this suggestion that the prosecutor's decision whether or not to itself endorse this proceeding should have any bearing. That's contrary to Intel, and it's contrary to, I think, the statutory requirements in case law in this district. Just to back up into Intel, in that case, and it's ‑‑ I read it a few times, and I didn't pick up on this until maybe the, you know, the fourth or fifth, but in that case, the Directorate General of Competition, which ultimately, accidentally, equated to an investigating magistrate, there was evidence that the petitioner, the private litigant, had asked the DG Competition, the Directorate General, to itself pursue evidence in the United States, and the Directorate General declined. And it was only after that that the private litigant came in and sought 1782. Obviously, you know, infamously, that went to the Supreme Court and has laid the foundation for the discretionary factors that the court, the district courts are to weigh, and not one of them. Okay. Final point. Final point is on this court's decision in EuroMAPA, I think, informs the ultimate use restriction, which is, and I think this is probably a point that the court's made, but once the evidence is put in front of, in the proceeding, it is not for this court, for the district court or this court, to impose restrictions on what can be done with it in that proceeding. Thank you. Thank you, Mr. Rosenbaum. Mr. Martinez, two minutes. Your Honors, thank you for the indulgence on the time earlier. I'll just try to make four quick points.  The first one is that the court is imposing the use restriction in the first instance, but, of course, the reason we didn't think that was going to work was because the use restriction is illusory in the sense that you can just give the information to the prosecutors and get it right back. He suggests that the prosecutors are going to have some discretionary ability under Austrian law to control what we do with it. There's nothing that he's cited to or pointed to in the record that suggests that Austrian law gives prosecutors that discretion. Section 68 of the Code of Criminal Procedure says that they have to let their documents, it doesn't allow them to say no, except in cases where inspection of the documents is going to interfere. Does it say anything about their ability to make copies of it, of those documents? I think it's silent, but I assume that the other side would say that they are, they do under Austrian law have the ability to make copies because, of course, what they're going to do is turn around and submit it to the arbitration. If they can't make copies, then that would be helpful to us. Well, no, the question is can the prosecutor authorize them to use it? I thought the use restriction was to say that they can only use it in the arbitration if the prosecutor affirmatively authorizes that use. Right. So if they only have a right to inspect the file, and that's what the Code of Civil Procedure says, Criminal Procedure says, I'm not sure I understand even why there would be a claim that they not only have the right to inspect it, but they have an automatic right to make copies of those documents that would then be able to be used in some independent proceeding. There's nothing in Section 68 that gives them the right to make copies, and the parties haven't litigated that question of Austrian law, but I think what the other side would say is that part of inspecting would give them the ability to make copies and then use that information elsewhere. But is it wrong that the use restriction imposed by the district court was that they may only use it in the arbitration if the prosecutor authorizes that? That's correct. So that's a different question entirely than can they inspect the documents and the files and what might happen then because if they use that, okay, we inspected the files as is our right and we make copies as is our right, it seems to me the use restriction would still be in place. Right. I think they would need to get the prosecutor to sign off. Okay, so their ability to inspect the documents is kind of a red herring then. The question is they are not allowed to use it in the arbitration unless the prosecutor affirmatively authorizes it. I don't think anyone has cited or I can't imagine there would be a provision in Austrian law that says that if the prosecutor is asked to authorize something because a party wants to do something in accordance with an American court, that he can't do that? Or maybe if he can't authorize it, then they lose. I think the sum total is that essentially what the district court did was give the control over the use restriction to the Austrian prosecutor, which I think is an odd thing to do under 1782. An odd thing is different than an illusory thing. Well, it's illusory in the sense that we don't think the Austrian prosecutor is going to care about the arbitration, so we don't see any reason why the Austrian prosecutor would say no. And so we think it will be in practice in the real world illusory. I think the second point I was going to make, frivolousness, we don't think is the right way to think about the standard. That's inconsistent with how the district courts, the reason district courts that have looked at this problem have thought about it, and I think it leads to circumvention problems. I think the third point I was going to make was that we do think that there is a very significant mismatch here between the discovery that's being sought and the actual things that the Austrian prosecutors are interested in. We know what they're interested in from a couple quick things. Number one, they haven't filed anything here. They haven't tried to get 1782 themselves. Number two, they've issued a summons to Mr. Deese, my client, and then they subsequently interviewed him. BNC knows about the summons. The summons said they were only interested in three discreet, very narrow topics. That's at docket 1182. And then the final point on that is that their expert says he's been in touch with the prosecutors throughout the entire investigation. That's at JA1110. And so obviously if the prosecutors know from their own counsel that there's this proceeding going on, if they really wanted this information, they could have just asked for it. And then finally, all I'll say is we do welcome the court's invitation to file a motion to consolidate. We will do that. We would just respectfully ask that the court give us the opportunity to fully brief up the use restriction question. We'll let you know. Thank you, Your Honor. So just the motion to consolidate within two days? Yeah, we're happy to do it. Just a letter. Yeah, we'll do it within two days. Thank you, Your Honor. Thank you. Matter is submitted. We'll take it under advisory.